IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DANIEL CASANOVA AND TIFFANY SAUL, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 5:13-cv-01161 |
| GOLD'S TEXAS HOLDINGS GROUP, INC., | § § § | JURY DEMANDED |
| Defendants. | § § | |

**MOTION AND BRIEF IN SUPPORT OF AGREED MOTION FOR APPROVAL OF
SETTLEMENT AND UNOPPOSED REQUEST FOR WITHDRAWAL OF MOTION
FOR SUMMARY JUDGMENT ORDER**

## I.  INTRODUCTION

Subject to this Court's approval, the Parties have reached a settlement in this matter. After nearly three years of litigation and a mediation held before the Honorable Karen Willcutts from Dallas, a former Civil Associate Judge for Dallas County, Texas, the Parties reached a settlement wherein Gold's Texas Holdings Group, Inc. ("Gold's Gym") will pay $625,000 to settle all claims in this action. The settlement resolves all claims in this action, including allegations that Gold's Gym misclassified trainers and allowed trainers to work off the clock in violation of the Fair Labor Standards Act ("FLSA").

This action was originally filed by Daniel Casanova and Tiffany Saul ("Named Plaintiffs") on December 22, 2013. The lawsuit asserts that Gold's Gym misclassified Personal Trainers as exempt under Section 7(i), allowed them to work off the clock and therefore owes

overtime. Following conditional certification of this matter pursuant to the FLSA, 79 additional individuals filed Consent Forms to become party plaintiffs.

The Parties engaged in significant litigation efforts prior to settlement. Written discovery was extensive. Plaintiffs requested, and Gold's Gym produced, policy and compensation documents pertaining to each of the alleged policies Plaintiffs contended were unlawful in this lawsuit. Gold's Gym further produced thousands of pages of documents, including voluminous electronic data, concerning the 82 class members. Pay records, training records, and personnel files were produced for such individuals. In addition, Gold's Gym deposed the Named Plaintiffs and twenty-four (24) plaintiffs to better assess the damages and allegations made in the litigation. Gold's Gym sought to depose additional Plaintiffs but was denied that opportunity. Plaintiffs deposed a Human Resources executive and a payroll administrator.  Such efforts allowed both sides to further understand the allegations and potential exposure at issue. It was only following this discovery that the Parties attended a private mediation before the Honorable Karen Willcutts.

Accordingly, the pending settlement was the result of discovery and was the product of adversarial negotiations which culminated after over two years of litigation. While the matter did not resolve at mediation, the parties continued to discuss resolution informally and through Judge Willcutts.  The ultimate resolution was achieved through a mediator's proposal. Counsel for the Parties and the Parties themselves have carefully evaluated the risks, time, and costs associated with continuing this litigation. It represents a fair compromise to what will otherwise be a long and uncertain path of litigation for both Parties.

The settlement agreement provides that Gold's Gym shall pay $625,000 to settle this action. There is no "claims made" mechanism or similar procedure which will be required of class members to receive payment; rather, every eligible party plaintiff will be issued a check.

Every such party plaintiff will be releasing all claims which are based on the underlying facts, including all FLSA claims they have against Gold's Gym which were incurred through the date of execution of the Settlement Agreement.

Accordingly, the Parties make this motion: (1) for approval of the settlement with respect to the FLSA claims asserted, and (2) as a condition of settlement, Gold's Gym seeks withdrawal of the March 23, 2016 order (1) Granting Plaintiffs' Motion for Partial Summary Judgment and (2) Denying Defendant's Motion for Summary Judgment (the "Order")-relief which Plaintiffs do not oppose.

## II.  PROCEDURAL HISTORY

### A.      Approval is Appropriate

An FLSA claim, except in two circumstances, cannot be waived or settled.  *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945).  The exceptions are: (1) the Secretary of Labor can supervise the payment of back wages; or (2) the employer and employee can present the proposed settlement to the district court for approval.  29 U.S.C. § 215(b); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).  A district court, when reviewing a proposed settlement of an FLSA claim, must "scrutinize[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food,* 679 F.2d at 1353, 1355.

There is an initial presumption of fairness when a proposed settlement was negotiated at arm's length by counsel for the class.  *Murillo v. Texas A&M Univ. Sys.,* 921 F. Supp. 443, 445 (S.D. Tex. 1996).  The presumption is then established in fact if the court finds that the parties arrived at the settlement through arm's length bargaining; the parties and court were sufficiently aware of the relevant issues; and counsel for the parties are experienced in similar litigation.  *See id.* at 446.  The recommendation by Plaintiff's counsel and the good faith bargaining between the

parties also militates heavily in favor of approving the settlement, as "[c]ourts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching . . ." *Id*.  The law, in fact, favors compromise and settlement of collective and class action suits.  *See Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) (in a class action context, providing that "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"); *Ortega v. Uponor, Inc. (In re Uponor, Inc.)*, 716 F.3d 1057, 1063 (8th Cir. 2013) (in a class action context, providing that "[a] settlement agreement is presumptively valid."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The above presumption applies here. The proposed settlement was reached after substantial and lengthy litigation, which involved significant motion practice, depositions, and voluminous written discovery. After significant litigation, the Parties attended mediation before the Honorable Karen Willcutts from Dallas, a former Associate Judge for Dallas County. The

case did not settle at the mediation but settled after some informal discussions, re-engagement with Judge Willcutts, and ultimately acceptance by both sides of a mediator's proposal (which included the condition of withdrawal of the Order). The settlement provides a fair compromise of the claims asserted. Accordingly, the settlement was not the result of some type of backdoor agreement but instead the result of the Parties and their counsel fully evaluating the risks of litigation and the benefits of settlement under the auspices of a former judge and experienced class action, employment law mediator.

      **1.     There is a bona fide dispute regarding the amount of damages and whether Defendants violated the FLSA.**

To provide the court with sufficient information to determine whether a bona fide dispute exists, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Felix v. Thai Basil At Thornton, Inc.,* 2015 U.S. Dist. LEXIS 62020, *3 (D. Colo. May 6, 2015).

Here, Plaintiffs contend that they were improperly classified under Section 7(i) of the FLSA (the retail sales exemption) and that they were therefore improperly denied overtime. Specifically, the issues in dispute are as follows:

    1.    Plaintiffs assert that they were improperly classified as exempt under Section 7(i) as they contend the money paid to them for personal training sessions was more akin to an hourly rate rather than a commission. Gold's Gym asserts that the money paid is a commission as it is based on a percentage of the amount charged to the client. In the Order, the Court agreed with Plaintiffs. Gold's Gym sought interlocutory review of the Order which the Court denied.

    2.    Plaintiffs further contend that they were allowed/required to work off the clock. Each Plaintiff's allegations were different as to the amount of time allegedly worked. Gold's Gym disputed both the fact and amount of off the clock work.

The law regarding what constitutes a commission is continuing to develop. Plaintiffs contend that the training "commission" is not sufficiently decoupled from time to be a true commission. Gold's Gym asserts that trainers had ample opportunity to work more efficiently and earn more money than simply by working more hours. Plaintiffs further contend that they worked off-the-clock thereby incurring more overtime. Their factual allegations vary regarding how much and why they worked off the clock (instructed to, did on own, etc.). Gold's Gym disputes that Plaintiffs were instructed to work off the clock, or that management was aware of such alleged off the clock work; therefore, Gold's Gym challenged Plaintiffs' credibility on these issues. Thus, there is accordingly a dispute both legally and factually relating to whether Gold's Gym's conduct violated the law.

### 2. The Settlement is fair and reasonable based on the attendant risks of continued litigation.

"The Settlement Agreement was reached as a result of a contested litigation to resolve bona fide disputes—both factual and legal disputes that remain unresolved." *Forauer v. Vt. Country Store, Inc.*, 2015 U.S. Dist. LEXIS 5604, *15-16 (D. Vt. Jan. 16, 2015) (upholding fairness of settlement where the parties were represented by counsel, there was a bona fide dispute, and the settlement was fair and reasonable); *see also Bozak v. FedEx Ground Package Sys., Inc.*, 2014 U.S. Dist. LEXIS 106042, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA settlement and noting that settlement was reached after negotiations concerning "the uncertain legal and factual issues involved").

Additionally, the claims were investigated both factually and legally by both sides. To calculate the hours worked by Plaintiffs (and to determine potential damages), counsel for Plaintiffs analyzed the payroll data and calculated the alleged overtime violations assuming that Plaintiffs were non-exempt and using anecdotal evidence provided by Plaintiffs of off the clock

work. Plaintiffs' damage model also included liquidated damages, which could potentially double the award. However, liquidated damages were not assured if litigation continued. And, while both sides in this litigation believe they have meritorious positions, both concede that their positions are subject to risk as to liability and damages. In particular, a trial on the merits would involve significant risks to Plaintiffs because of the need to present 82 Plaintiffs and a complex damage model.  Additionally, the issue of off the clock work is fact-intensive and subject to significant cross examinations.  And, a trial at this juncture held risk to Gold's Gym who had already lost partial summary judgment.  Both parties understood that Gold's Gym would appeal the Order after trial – further brightening the litigation process.

To prove liability, Plaintiffs would have to defeat Gold's Gym's arguments that it did not "suffer or permit" Plaintiffs to work off the clock and/or that their claims of off the clock work lack credibility. Gold's Gym further disputed the accuracy and reliability of Plaintiffs' damage calculations.   Specifically, Gold's Gym challenged the overtime calculations regarding the alleged 7(i) damages.  And, Gold's Gym attacked whether many of Plaintiffs' anecdotal claims of off the clock work were credible and/or could be tried collectively for the reasons set forth in detail in prior briefing.

While Plaintiffs believe their claims are meritorious, and Gold's Gym likewise believes its defenses are meritorious, counsel for the Parties are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates such uncertainty in a fair and reasonable manner.

The parties reached a compromise which compensates all Plaintiffs for all alleged damages for alleged misclassification under Section 7(i) including liquidated damages as well as

alleged off the clock damages including liquidated damages.  Specifically, each Plaintiff's

recovery was calculated based on the method for calculating damages under the FLSA, which

depends on the following variables: (1) each Plaintiff's recorded hours worked and compensation

(by using payroll and time date produced by Gold's Gym); and (2) each Plaintiff's (alleged)

hours worked off the clock (based on each Plaintiff's deposition testimony, if a deposition was

conducted, or Plaintiffs' counsel's direct communication with each Plaintiff regarding the

additional hours they worked off the clock and the individual circumstances involved in this

(alleged) unpaid work.  Each Plaintiff who opted into this lawsuit and did not subsequently

request to opt out is receiving an individualized recovery amount based on these two factors.

Plaintiffs' counsel created a detailed damages model including both reported hours worked and

work performed off the clock and determined each Plaintiff's individual recovery based on their

individual damage model and the total settlement fund.  Plaintiffs receiving a nominal recovery

of $100.00, as listed in Exhibit A, are either time barred or not otherwise entitled to a recovery

based on discovery and information communicated to Plaintiffs' counsel.  Specifically, these

individuals reported working less than forty hours per week during the maximum three-year

statute of limitations.

Accordingly, the settlement falls within the range of reasonableness and justifies

approval.

### 3.    The Settlement was reached as a result of arm's length bargaining in the midst of adversarial litigation and is not collusive.

The Settlement Agreement here was entered into "after an investigation of the claims and

defenses," *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014), and after the

Parties engaged in "extensive discovery and damages calculations." *Flores v. One Hanover*,

*LLC*, 2014 U.S. Dist. LEXIS 78269, at *6 (S.D.N.Y. June 9, 2014). The Settlement Agreement is

"the product of negotiation between represented parties," which supports a finding that it "did not come about because of 'overreaching' by the employer." *Lliguichuzhca v. Cinema 60*, 948 F. Supp. 2d 362, 365-66 (S.D.N.Y. June 5, 2013) ("Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable."); *accord Hernandez v. Tabak*, 2013 U.S. Dist. LEXIS 51852, 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013) (concluding settlement "negotiated at arm's length [was] not the product of coercion"); *see also Forauer v. Vt. Country Store, Inc.*, 2015 U.S. Dist. LEXIS 5604, *15-16 (D. Vt. Jan. 16, 2015).

Additionally, Plaintiffs are represented by counsel who are well informed and practiced in collective wage and hour litigation, and are realistic and knowledgeable of the risks and benefits of the settlement. Plaintiffs' counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions.

### III.   THE FEES AND COSTS ALLOTMENT IS REASONABLE

Plaintiffs' counsel's fees and costs allotment of the settlement amount totals $260,049.16, which includes over $11,000 in costs.  Prior to initiating litigation, the Named Plaintiffs agreed to compensate Plaintiffs' counsel on a contingent basis equal to 40% of the total monetary award, plus costs, and the settlement class further agreed to this fee award when opting into this lawsuit.  Moreover, Plaintiffs' counsel's lodestar attorneys' fees and costs to date total slightly more then the settlement allotment, $267,074 which represents 750 hours of legal work over an almost three-year period.  This amount includes only the work of attorneys; Plaintiffs' counsel is not seeking recovery of any paralegal time. This case involved complex and novel legal work, particularly regarding the application of 29 U.S.C. § 207(i) to Plaintiffs' compensation, and was conducted with no guarantee of any recovery for Plaintiffs' counsel.  Despite these risks, Plaintiffs' counsel secured orders from this Court on conditional certification and summary

judgment in their favor and denying decertification and Gold's Gyms' own motion for summary judgment.

The attorneys' fees allotment therefore represent a fair and reasonable amount based on either Plaintiffs' counsel fees under the lodestar calculation or the original contingency agreement between counsel and Plaintiffs.

## IV.  WITHDRAWAL OF THE ORDER IS PROPER

As a condition of the Settlement, Gold's Gym seeks withdrawal of the Order.  Plaintiffs do not oppose this relief, understood it was part of the mediator's proposal, and agreed to this request as a condition of settlement.  If the Court declines to withdraw the Order, Gold's Gym has the right to opt out of the settlement.  *See Major League Baseball Properties, Inc. v. Pacific Trading Cards*, 150 F.3d 149 (2d Cir. 1998) (approving a vacatur of a prior ruling was appropriate as condition of settlement).

In this instance, a significant hurdle in reaching a resolution was the fact that Gold's Gym would have to forgo its right to appeal the Order.  The issue of whether 7(i) applied was a hotly contested issue.  Gold's Gym was denied the opportunity to pursue an interlocutory appeal.  As such, the Parties agreed that Gold's Gym could opt out of the settlement if the Court does not withdraw the Order.  Withdrawal of the Order does not damage the public interest as the issues being litigated have limited scope.  Further, Gold's Gym has been implementing changes to its compensation policies, but the Order continues to present potential risks to Gold's Gym.  As such, Gold's Gym respectfully asks the Court to issue an order withdrawing the Order as part of the approval of the settlement.  Otherwise, the Settlement Agreement shall be null and void.

## V.  CONCLUSION

The settlement reached was a fair and reasonable compromise of the respective positions of both sides.  The Parties therefore respectfully request that the Court, withdraw the Order,

approve the settlement and enter the Agreed Order of Dismissal.

## CERTIFICATE OF CONFERENCE

Counsel for Gold's Gym has conferred with counsel for Plaintiffs who do not oppose

Defendant's Request for Withdrawal of the Order.


/s/ *Carrie B. Hoffman*
Carrie B. Hoffman

Respectfully submitted,


By: */s/ Carrie B. Hoffman*
Carrie B. Hoffman
Texas Bar No. 00787701
J. Michael Thomas
Texas Bar No. 24066812
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, TX  75201-4761
Telephone:  (214) 999-4262
Facsimile:  (214) 999-3262
E-mail: choffman@gardere.com
E-mail: mthomas@gardere.com

**ATTORNEYS FOR DEFENDANTS**

*-and-*

By: */s/Lawrence Morales II*
Lawrence Morales II
State Bar No. 24051077
Allison S. Hartry
State Bar No. 24083149
THE MORALES FIRM, P.C.
115 E. Travis, Suite 1530
San Antonio, Texas 78205
Telephone No. (210) 225-0811
Facsimile No. (210) 225-0821
lawrence@themoralesfirm.com
ahartry@themoralesfirm.com


**ATTORNEYS FOR PLAINTIFFS**

---

**MOTION AND BRIEF IN SUPPORT OF AGREED MOTION FOR APPROVAL OF
SETTLEMENT AND UNOPPOSED REQUEST FOR WITHDRAWAL OF MOTION
FOR SUMMARY JUDGMENT ORDER**

Gardere01 - 9535360v.2